**IN UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SAMUEL MAINE | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO.:_____ |
| | ) | |
| (1) STATE OF OKLAHOMA, ex rel. | ) | |
| OKLAHOMA DEPARTMENT OF | ) | ATTORNEY LIEN CLAIMED |
| CORRECTIONS; | ) | |
| | ) | JURY TRIAL DEMANDED |
| (2) LISA CATHEY, LPN; | ) | |
| | ) | |
| (3) TIMOTHY NELSON, O.D. | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT

COMES NOW, Plaintiff, Samuel Maine, by and through his attorneys of record, and for his cause of action against the named Defendants, avers and alleges as follows:

### JURISDICTION, VENUE, AND PARTIES

1.      This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and directly under the United States Constitution. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant State of Oklahoma ex rel. Oklahoma Department of Corrections is located in the Western District of Oklahoma.

2.      Plaintiff, Samuel Maine is a resident of the State of Oklahoma and currently an inmate at Allen Gamble Correctional Center in Holdenville, Oklahoma.

3.      Defendants Cathey and Nelson were healthcare providers for the Defendant Oklahoma Department of Corrections at the time of the actions complained of herein.

4.      Defendant Oklahoma Department of Corrections is a state subdivision with its headquarters in Oklahoma City, Oklahoma County, Oklahoma. A Notice of Tort Claim was sent to Defendant May 16, 2025.

## FACTUAL ALLEGATIONS

Plaintiff incorporates all prior allegations and further states as follows:

5.      May 29, 2024, Samuel Maine, and inmate at Allen Gamble Correctional Center was working in the kitchen when some sheet pans fell and struck him in his right eye. He was taken to medical where he was seen by an LPN, Lisa Cathey, and given Tylenol and eye drops. It was noted that his right eye was swollen and there was blood noted in his conjunctiva.

6.      Pursuant to the Oklahoma Department of Corrections Nursing Practice Protocols, Defendant Cathey, based on Mr. Maine's presentation, should have arranged immediate emergency care and transfer without delay.

7.      Mr. Maine was seen by an optometrist, Timothy Nelson, June 12, 2024, at Great Plains Correctional Center where It was noted that he could not open his right lid and his sight was significantly degraded.

8.      After his mother, Brenda Maine called and made a fuss after hearing from her son that he was not receiving treatment, Mr. Maine was finally taken to the Emergency Room at University of Oklahoma Medical Center, June 28, 2024, a month after the incident.

9.      During the month that he was denied adequate and effective treatment, Plaintiff experienced further complications with his right eye and made confirmed complaints about his vision. Despite Mr. Maine experiencing and complaining about these

complications with his right eye, the facility did nothing to provide him further medical treatment.

10.    The Emergency Department of University of Oklahoma Medical Center determined that Mr. Samuel was likely experiencing a complete Posterior Vitreous Detachment ("PVD").

11.    Mr. Maine was advised that he would likely have to have surgery to correct the condition and that he could possibly experience permanent vision loss.

12.    Mr. Maine had a follow-up visit at the Dean McGee Eye Institute on July 1, 2024.

13.    He was diagnosed with Hyphema of the right eye and Vitreous hemorrhage of the right eye. Both conditions went virtually untreated for nearly a month, increasing the risk of permanent vision loss.

14.    Mr. Maine had a follow-up visit at Dean McGee Eye Institute on July 17, 2024, at which time it was determined that in addition to the previous diagnosis of Vitreous hemorrhage and Hyphema, Mr. Maine was experiencing Traumatic Iritis/Mydriasis. At this time, the plan was to refer him for a surgical evaluation.

15.    Mr. Maine's surgical evaluation July 26, 2024, determined that he had a subluxated lens and retinal detachment. The evaluating doctor concluded that Mr. Maine would need a Pars Plana Vitrectomy and surgery to repair his retina. Mr. Maine was also informed that he might later need a lensectomy.

16.    Mr. Maine continues to experience vision loss, pain and suffering as a result of Defendants' failure to provide him appropriate medical treatment after his May 29, 2024, injury.

17.    When he inquired about filing a grievance due to Defendants' failure to provide him adequate medical care, Mr. Maine was informed that it was not necessary that he file a grievance as Defendants would take care of him.

18.    Mr. Maine was thwarted by prison administrators, with apparent authority, from taking advantage of a grievance process through machination, misrepresentation or intimidation.

19.    Prison officials, prevented, thwarted and hindered Mr. Maine's efforts to avail himself of an administrative remedy while he was under emotional distress, in pain, and blind in one eye, rendering any administrative remedy unavailable.

## COUNT I

### VIOLATION OF CIVIL RIGHTS CONFERRED BY THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION PROHIBITING CRUEL AND UNUSUAL PUNISHMENT (42 U.S.C. § 1983)

For his first cause of action Plaintiff incorporates all prior allegations and further states as follows:

20.    The actions of Defendants complained of herein are brought pursuant to 42 U.S.C. § 1983 and constitute a violation of the Eight Amendment to the United States Constitution as incorporated through the Fourteenth Amendment. Defendants' policies, practices, acts, and omissions demonstrate their deliberate indifference to Mr. Maine's serious medical needs and he was harmed thereby, in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

21.    Defendants knew that Mr. Maine faced a substantial risk of serious harm if he was not provided adequate medical care for the blunt trauma to his right eye, and

failed to provide treatment though he was blind in that eye for nearly a month before they sent him to a specialist outside the prison system.

22.    Defendants disregarded that risk by failing to take reasonable measures to address Mr. Maine's serious medical needs.

23.    Defendants' failure to adequately treat, or even assess, the blunt force trauma to his right eye has resulted in further significant injury as, presently, he is facing permanent vision loss in his right eye, and the unnecessary and wanton infliction of pain.

24.    Defendants were aware that they were responsible for providing adequate health care services to the inmates in custody and acknowledged a shortage of qualified healthcare resources to provide certain necessary medical services to its inmate population within its institutions as recently as February 2023.

25.    Defendants knew or should have known that Mr. Maine would require specialized treatment outside the prison system.

26.    Defendants acted under color of law.

27.    Defendants' deliberate indifference to Mr. Maine's serious medical needs caused him harm.

28.    It was clearly established at all relevant times that Defendants' actions were unconstitutional, and Defendants were aware that their actions were unconstitutional.

29.    As a direct and proximate cause of Defendants' deprivation of his constitutional rights, Samuel Maine has suffered real and actual damages, including mental and physical pain and suffering, emotional distress, lost wages, and other damages in excess of $75,000.00.

## COUNT II

## INTENTIONAL INFLICTION OF EMOTION DISTRESS

For his second cause of action Plaintiff incorporates all prior allegations and further states as follows:

30.     Defendants' failure to provide Plaintiff appropriate medical treatment, was so extreme and outrageous as to go beyond all possible bounds of decency and is considered atrocious and utterly intolerable in a civilized society.

31.     Defendants' failure to provide Plaintiff appropriate medical treatment, was done in reckless disregard of his rights.

32.     Defendants intentionally caused severe emotional distress to Plaintiff as they knew or should have known that failure to appropriately treat his eye injury could result in vision loss, which would cause any reasonable person severe emotional distress.

33.     Defendants caused this emotional distress in the course and scope of their employment with the Oklahoma Department of Corrections and in reckless disregard of the rights of Plaintiff.

34.     Defendants' actions caused Plaintiffs emotional distress, physical injury, medical expenses in an amount more than $75,000.00.

## **PRAYER OF RELIEF**

35.     Plaintiff prays for judgment as follows:

a.     A judgment against Defendants awarding Plaintiff compensatory damages as consequence of Defendant's wrongful conduct.

b.     A judgment against Defendants awarding Plaintiff exemplary damages as consequence of Defendants' wrongful conduct.

c.      A judgment against Defendants awarding Plaintiff punitive damages as consequence of Defendants' wrongful conduct.

d.      A judgment against Defendants awarding Plaintiff any and all other costs or further relief to which this Court deems Plaintiff entitled, including attorney fees, costs and expenses.

**WHEREFORE**, Plaintiff seeks recovery from the Defendants in an amount in excess of Seventy-Five Thousand and no/100 Dollars ($75,000.00), and for such other and further relief as the Court deems appropriate, including, but not limited to, court costs, attorney's fees and interest.

Respectfully submitted,

*/s/ Chanda R. Graham*
Chanda R. Graham, OBA #17809
**HOLLOWAY, BETHEA & OTHERS**
3035 N.W. 63rd, Suite 102N
Oklahoma City, OK 73116
Telephone:  (405) 246-0600
Facsimile:  (405) 810-4080
*cgraham@hbolaw.com*
**ATTORNEYS FOR PLAINTIFF**

.